# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

### COA #: 14-1572

---

## UNITED STATES OF AMERICA

### Plaintiff/Appellee,

### v.

## TIMOTHY IVORY CARPENTER

### Defendant/Appellant

---

**On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division**

---

## APPELLANT'S BRIEF

---

Harold Gurewitz (P14468)
*Attorney for Appellant Carpenter*
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733

# TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement in Support of Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . . ix

Statement of Subject Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . 1

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case and Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.    PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    INDICTMENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    PRE-TRIAL MOTIONS CONCERNING CELL TOWER EVIDENCE. . . . . . . . . 6

    3.    TRIAL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.    TESTIMONY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    1.    COUNTS 1 & 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    2.    COUNTS 3 & 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    3.    COUNTS 7 & 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    4.    COUNTS 9 & 10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    5.    COUNTS 11 & 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    6.    COUNTS 13 & 14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.    TESTIMONY REGARDING CELL TOWERS HISTORIC CELL PHONE DATA. . . . 17

D.    SENTENCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ISSUE I:    GOVERNMENT ACQUISITION OF CARPENTER'S HISTORIC
CELL PHONE LOCATION DATA FOR A FIVE MONTH
PERIOD, WITHOUT A WARRANT, VIOLATES THE FOURTH
AMENDMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Standard of Review: When reviewing the denial of a motion to
suppress, this court reviews the district court's findings of fact
for clear error and its conclusions of law de novo. *United States
v. Stepp*, 680 F3d 651, 660 (6th Cir. 2012).. . . . . . . . . . . . . . . . . . 26

A.    USE OF AN ORDER TO OBTAIN FIVE MONTHS OF
DETAILED CELL SITE LOCATION DATA IS A "SEARCH"
UNDER THE FOURTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . 29

B.    THE GOOD FAITH EXCEPTION DOES NOT APPLY. . . . . . . . . . . 34

ISSUE II:    THE GOVERNMENT FAILED TO ESTABLISH BY A
PREPONDERANCE OF THE EVIDENCE THAT VENUE WAS
PROPER IN THE EASTERN DISTRICT OF MICHIGAN FOR
COUNTS 7 AND 8.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Standard of Review: This Court reviews *de novo* a district
court's denial of a motion for acquittal pursuant to FRCrP Rule
29, but that decision will be affirmed if the evidence, viewed in
the light most favorable to the government, would allow a
rational trier of fact to find the defendant guilty beyond a
reasonable doubt. *United States v. Stafford*, 721 F2d 380, 390
(6th Cir. 2013). The Court will reverse a judgment due to
insufficient evidence only if the judgment is not supported by
substantial and competent evidence upon the record as a whole.
*Id*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ISSUE III:    A NEW TRIAL IS REQUIRED BECAUSE CARPENTER WAS
               DENIED THE OPPORTUNITY TO ESTABLISH THAT ADRIANE
               FOSTER LIED ABOUT CARPENTER'S ROLE IN THE
               WARREN, OHIO ROBBERY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

               Standard of Review**: This Court reviews a District Court's
               evidentiary rulings for abuse of discretion. *United States v.
               Marrero*, 651 F3d 453, 471 (6th Cir. 2011). . . . . . . . . . . . . . . . . . 43

ISSUE IV:     CARPENTER'S 1,395 MONTH SENTENCE VIOLATES THE
               CONSTITUTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

               Standard of Review: A constitutional challenge to a sentence is
               reviewed *de novo*. *United States v. Moore*, 643 F3d 451, 454
               (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

               A.     EIGHTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

               B.     SEPARATION OF POWERS.. . . . . . . . . . . . . . . . . . . . . . . . 52

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## TABLE OF AUTHORITIES

***SUPREME COURT CASES:***                                           ***Page***

*Coker v. Georgia*, 433 US 584 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Daubert v. Merrill Dow*, 509 US 579 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Graham v. Florida*, 560 US 1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Harmelin v. Michigan*, 501 US 957 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Heien v. North Carolina*, 135 S Ct 530 (2012). . . . . . . . . . . . . . . . . . . . . . . . 37

*Herring v. United States*, 555 US 135 (2009). . . . . . . . . . . . . . . . . . . . . . . . 37

*I.N.S. vs. Chadha,* 462 US 919, 951 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Katz v. United States*, 389 US 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Kennedy v. Louisiana*, 554 US 407 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Kyllo v. United States*, 533 US 27 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Miller v. Alabama*, 132 S Ct 2455 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Mistretta v. United States,* 488 US 361 (1989). . . . . . . . . . . . . . . . . . . . . . . . 53

*Riley v. California*, 134 S.Ct 2473 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Roper v. Simmons*, 543 US 551 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Rummel v. Estelle*, 445 US 263 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Smith v. Maryland*, 442 US 735 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Solem v. Helm*, 463 US 277 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Johnson*, 323 US 273 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Jones*, 132 S Ct 945 (2012).. . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Leon*, 468 US 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Rodriguez-Moreno*, 526 US 275 (1999).. . . . . . . . . . . . . . . . . 39

*Weems v. United States*, 217 US 349 (1910).. . . . . . . . . . . . . . . . . . . . . . . . . 49

***Sixth Circuit Cases:***

*Cathey v. Johns-Manville Sales Corp*, 776 F2d 1565 (1985).. . . . . . . . . . . . . . . 44

*United States v. Beddow*, 957 F2d 1330 (1992)... . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Carpenter*, 360 F3d 591 (2004) . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Cecil,* 615 F3d 678 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Franklin,* 499 F3d 578 (2007). . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Hopper*, 94 F2d 419 (1991). . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Jamerson,* 536 Fed Appx 606 (2013).. . . . . . . . . . . . . . . . . . . 54

*United States v. Marrero*, 651 F3d 453 (2011). . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Moore*, 643 F3d 451 (2012). . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Skinner*, 690 F3d 772 (2012). . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Stepp*, 680 F3d 651 (2012). . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Stafford*, 721 F2d 380 (2013). . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Weaver*, 99 F3d 1372 (1996). . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Wood*, 364 F3d 704 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

___OTHER CIRCUIT CASES___**:**

*Doty v. Elias*, 733 F2d 720 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*In re Application of U.S. for an Order Directing a Provider of*
   *Elec. Commc'n Serv. to Disclose Records to Gov't,*
   620 F3d 304 (3rd Cir.2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jankins v. TDC Management Corp., Inc.*, 21 F3d 436 (DC Cir. 1994). . . . . . . . . 45

*United States v. Adamson*, 291 F3d 606 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . 45

*United States v. Barrata*, 397 F2d 215 (2nd Cir. 1968). . . . . . . . . . . . . . . . . . . . 44

*United States v. Bowens*, 224 F3d 302 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . 41

*United States v. Davis*, 689 F3d 179 (2nd Cir. 2012). . . . . . . . . . . . . . . . . . . . . 40

*United States v. Maynard*, 615 F3d 544 (DC Cir. 2010). . . . . . . . . . . . . . . . . . . 30

*United States v. Miller*, 111 F3d 747 (11th Cir, 1992). . . . . . . . . . . . . . . . . . . . 39

*United States v. Rappy*, 157 F2d 964, 967-68 (2nd  Cir. 1946). . . . . . . . . . . . . . . 44

*United States v. Reed*, 773 F2d 477 (2nd Cir, 1985). . . . . . . . . . . . . . . . . . . . . . 40

___DISTRICT COURT CASES___

*United States v. Evans*, 892 F Supp 949 (ND Ill, 2012). . . . . . . . . . . . . . . . . . . . 27

*United States v. Mikell*, 163 F Supp 2d 720 (ED MI 2001). . . . . . . . . . . . . . . . . 41

*United States v. Powell*, 943 F Supp 2d 759 (ED Mich. 2013). . . . . . . . . . . . . . . 31

## *RULES & STATUTES*

18 USC §2703(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 USC §2703(c)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

18 USC §3237(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

18 USC §1951(b)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

US Constitution, Art. III, §2, cl. 3.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

US Constitution, Amend. VI.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

FRCrP 18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

FRE 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

FRE 613(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## STATEMENT IN SUPPORT OF
## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to FRAP 34(a)(1) and Sixth Circuit Rule 34(a), Appellant Timothy Carpenter respectfully requests oral argument. Counsel for Appellant believes oral argument will assist this Court in rendering its decision.

### STATEMENT OF SUBJECT MATTER
### AND APPELLATE JURISDICTION
### PURSUANT TO FRAP RULE 28(A)(4)

The federal district court had jurisdiction of this case pursuant to 18 USC §3231 because the Government alleged violations of 18 USC §1951, 18 USC §924(c), and 18 USC §924(c)(1)(C)(i). The Court of Appeals for the Sixth Circuit has jurisdiction pursuant to 28 USC §1291.

The appeal is from the district court's Judgment in a Criminal Case dated April 28, 2014. (R301, Judgment, Pg ID 1600-05).

## STATEMENT OF THE ISSUES

I.    GOVERNMENT ACQUISITION OF CARPENTER'S HISTORIC CELL PHONE
      LOCATION DATA FOR A FIVE MONTH PERIOD, WITHOUT A WARRANT,
      VIOLATES THE FOURTH AMENDMENT.

      A.    USE OF AN ORDER TO OBTAIN FIVE MONTHS OF DETAILED CELL
            SITE LOCATION DATA IS A "SEARCH" UNDER THE FOURTH
            AMENDMENT.

      B.    THE GOOD FAITH EXCEPTION DOES NOT APPLY.

II.   THE GOVERNMENT FAILED TO ESTABLISH BY A PREPONDERANCE OF THE
      EVIDENCE THAT VENUE WAS PROPER IN THE EASTERN DISTRICT OF
      MICHIGAN FOR COUNTS 7 AND 8.

III.  A NEW TRIAL IS REQUIRED BECAUSE CARPENTER WAS DENIED THE
      OPPORTUNITY TO ESTABLISH THAT ADRIANE FOSTER LIED ABOUT
      CARPENTER'S ROLE IN THE WARREN, OHIO ROBBERY.

IV.   CARPENTER'S 1,395 MONTH SENTENCE VIOLATES THE CONSTITUTION.

      A.    EIGHTH AMENDMENT

      B.    SEPARATION OF POWERS

## STATEMENT OF THE CASE AND FACTS

**A.   PROCEEDINGS**

    **1.    INDICTMENTS**

Timothy Carpenter ("Carpenter") was tried on a Fourth Superseding Indictment ("Indictment") filed on July 10, 2013. (R119: 4th Superseding Indictment, Pg ID 640-649). It charged Carpenter in six counts with robbery affecting interstate commerce, in violation of 18 USC §1951(a) (Counts 1, 3, 7, 9, 11, and 13), and in six corresponding counts with aiding and abetting the use or carrying of a firearm during a federal crime of violence, in violation of 18 USC §924(c). (Counts 2, 4, 8, 10, 12, and 14).

The charges stem from alleged robberies of Radio Shack stores on December 13, 2010, March 4, 2011, April 11, 2011, and December 1, 2012 and T-Mobile stores on December 18, 2010 and October 31, 2012 in Michigan and Ohio. The robbery charges allege that Carpenter "knowingly and unlawfully took, and aided and abetted" others "in taking personal property from the person or presence of another through actual and threatened force and violence and by causing the victims to have a fear of immediate injury to their person during the defendants' robbery of the stores and "thereby obstructed, delayed, and affected interstate commerce."

The counts charging violations of 18 USC §924(c), each allege that Carpenter "knowingly used and carried, and aided and abetted" various individuals in "using and carrying, a firearm during and in relation to" a robbery affecting interstate commerce. There was no evidence that Carpenter ever entered any of the stores in a robbery, with a gun, or without a gun.

Carpenter was tried with his brother, Timothy Sanders, who was only charged together with Carpenter in Counts 7 and 8. Sanders was also charged as the only defendant in Counts 5 and 6. The Fourth Superseding Indictment also named Sedric Bell-Gill as a defendant along with Carpenter in Counts 3, 4, 11 and 12; and Patrick Heard, in Counts 13 and 14 with Carpenter, and by himself in Counts 15 and 16. Bell-Gill and Heard each pled guilty before trial and testified as witnesses for the Government. (R255: Bell-Gill Rule 11, Pg ID 1364-1389; R327: TR 12/9/13, Bell-Gill, Pg ID 2364-2458; R191: Heard Rule 11, Pg ID 888-913; R326: TR 12/6/13, Heard, Pg ID 2221-2268).

The first Indictment was filed on April 4, 2012. (R1, Indictment, Pg ID 1-5). It named only Michael Anthony Green, Earnest Roy Holt and Juston Labaron Young as defendants in robberies dated December 13, 2010, January 7, 2011 and February 2, 2011. Over four months later, the grand jury returned the First Superseding Indictment (R55, Pg ID 267-272), naming Carpenter for the first time

-4-

as a defendant with robbery affecting interstate commerce in Counts 1 and 3, and using or carrying a firearm during a crime of violence in violation of 18 USC §924(c), in Counts 2 and 4. Young was also charged in Counts 5 and 8.

A ten count second superseding indictment was filed on February 19, 2013 (R66, 2nd Superseding Indictment, Pg ID 300-306), naming Carpenter in robberies on December 13, 2010, December 18, 2010, April 5, 2011, October 31, 2012 and December 1, 2012. It also named Adriane Foster as a defendant in robbery charges for April 5, 2011, October 31, 2012 and December 1, 2012. Foster later pled guilty before Carpenter's trial and testified as a witness for the Government. (R328: TR 12/10/13, Foster, Pg ID 2496-2628; R96: Foster Rule 11, Pg ID 534-550).

Before the Third Superseding Indictment, Carpenter appeared on March 26, 2013, for a final conference and date set to enter a guilty. (R309: TR 3/26/13, Conference, Pg ID 1643-1645). Defense counsel asked the court for a brief adjournment to further discuss a plea. (Id, Pg ID 1643-44). The court was formally advised on April 9, 2010 that Carpenter rejected the Government's plea offer and asked for the court to set a trial date. (R310: TR 4/9/13, Hearing, Pg ID 1649, 1654).

A Third Superseding Indictment was filed on April 2, 2013 (R78: 3rd Superseding Indictment, Pg ID 384-393). It named Carpenter and Foster as

defendants, and also added Jesse Gordon Dismukes, Jr., David Lamont Holland and Lacrystal Elice Hill. Dismukes, Holland and Hill later pled guilty before Carpenter's trial. Dismukes and Holland testified as witnesses for the Government. (R325: TR 12/5/13, Dismukes, Pg ID 2058-2124; R325: TR 12/5/13, Holland, Pg ID 2132-2141; R326: TR 12/6/13, Holland, Pg ID 2160-2214).

The Fourth Superseding Indictment on which Carpenter was tried was filed on July 10, 2013. (R119: 4th Superseding Indictment, Pg ID 640-649).

## 2.    PRE-TRIAL MOTIONS CONCERNING CELL TOWER EVIDENCE

The Government used the Stored Communications Act, 18 USC §2703(d), during its investigation to obtain voluminous cell site location data from Sanders' and Carpenter's cell phone service providers for a time period of five months. (R221-2: Exh A: Application and Order-Sanders, Pg ID 1141-52; R221-3: Exh B: Application and Order-Carpenter Metro PCS, Pg ID 1153-63; R221-4: Exh C: Application and Order-Carpenter Sprint, Pg ID 1164-74). The Government explained in applications that it was seeking evidence related to violations of 18 USC §1951 and cited an interview with a "cooperating defendant" in support of the applications who, it was alleged, admitted involvement in "eight different robberies beginning in December 2010 and continuing through March 2011." (R221-3: Exh B: Application and Order-Carpenter Metro PCS, Pg ID 1155-56).

The applications were signed by an Assistant United States Attorney, not an agent. The court granted the applications authorizing the Government to obtain over five months of records for Carpenter's cell phone usage from two carriers, (Id, Pg ID 1160-61), including Metro PCS roaming on Sprint's cellular tower network. (R221-4: Exh C: Application and Order - Carpenter Sprint, Pg ID 1171-72).

Sanders filed a motion before trial to ask the court to suppress all cell tower evidence arguing that the orders based only on reasonable suspicion were unconstitutional. (R196: Motion to Suppress, Pg ID 954-966). Carpenter joined in the motion. (R214: Notice of Joinder, Pg ID 1102-1103; R216: Supplement to Notice of Joinder, Pg ID 1106-1114). 18 USC §2703, which permitted the government to obtain five months of cell site location data from Sanders' and Carpenter's cell phone service providers without warrants and only based upon "reasonable grounds," violated the Fourth Amendment. (R196: Motion to Suppress, Pg ID 957-959). The Government opposed the motion, relying on *United States v. Skinner*, 690 F3d 772 (6th Cir. 2012). It argued that §2703(d) was not unconstitutional, but if it was, the agents relied on the statute in good faith. (R221: Gov't Response to Motion to Suppress, Pg ID 1129). It was the Government's position that the applications satisfied the reasonable grounds standard because they "stated that the FBI was investigating a series of armed

-7-

robberies at Radio Shack and T-Mobile stores between December 2010 and March 2011 in Michigan and Ohio." (Id, Pg ID 1129-1130). The court denied the motion based on *Skinner*, *supra*, and held that §2703 did not violate the Fourth Amendment. (R227: Opinion & Order, Pg ID 1215-1216). Carpenter also argued, in limine, that proposed expert testimony by FBI Special Agent Hess about cell towers and his analysis of cell phone data collected using court orders, should be excluded because it was not reliable based on *Daubert v. Merrill Dow*, 509 US 579 (1993); (R211: Motion In Limine To Exclude Lay and Expert Opinion Testimony, Pg ID 1063-1065).

The court denied the motion on December 6, 2013. (R227: Opinion & Order, Pg ID 1218-1224). It reasoned that Hess' testimony was sufficiently reliable to qualify as expert testimony because the Government only sought "to have Hess testify that Defendants' cell phones were in geographic areas 'consistent with' the locations where the robberies occurred" (Id, Pg ID 1222) and that such testimony was "widely accepted by federal courts." (Id, Pg ID 1223).

### 3.    TRIAL

Voir dire took place on December 3, 2013, followed by opening statements and presentation of evidence from December 5 to 13, 2013. Closing arguments were presented on December 16, 2013.

The jury returned guilty verdicts for Carpenter on all counts except Count 2 (carrying a firearm in connection with a Radio Shack store robbery on December 13, 2010). In all, Carpenter was convicted of six robberies in violation of 18 USC §951 and five separate violations of 18 USC §924(c) for using or carrying a firearm in connection with a federal crime of violence and aiding and abetting. (R249, Verdict Form, Pg ID 1338-1343).

## B.    TESTIMONY

### 1.    COUNTS 1 & 2

The Radio Shack store on Jefferson Avenue in Detroit, was robbed on December 13, 2010. (R330: TR 12/12/13, Green, Pg ID 2830). Michael Green testified for the Government pursuant to a plea bargain that he planned the robbery with his cousin, Earnest Holt.(Id, Pg ID 2819-2820); and recruited "a guy named Nitty" to act as a gunman, and Carpenter to assist as a look out. (Id, Pg ID 2827).

Holt and Nitty entered the store and ordered employees to put "smart phones" in laundry bags supplied by Green.(Id, Pg ID 2828-2830; R329: TR 12/11/13, Robinson, Pg ID 2640-2648). Green and Carpenter watched from Carpenter's Pontiac Grand Prix in a nearby parking lot. (R330: TR 12/12/13, Green, Pg ID 2828-2830).

According to Green, he and Carpenter took the stolen phones after the

robbery to Green's house for sorting, and then to Oak Park, Michigan to sell them at Avi Mordechai's store. (Id, Pg ID 2831-2835). Green arranged the sale. (Id, Pg ID 2833). The Government presented no evidence that Carpenter had knowledge of the possession and/or use of a firearm during the robbery and conceded in its closing that there was a failure of proof on this charge (R333: TR 12/16/13, Gov't Closing Argument, Pg ID 3204).

**2.   COUNTS 3 & 4**

A T-Mobile cell phone store, at Seven Mile Road and Gratiot in Detroit, Michigan, was robbed on December 18, 2010. (R327: TR 12/9/13, McCullogh, Pg ID 2341; Amos, Pg ID 2352; R330, TR 12/12/13, Green, Pg ID 2836). Green testified that, on the morning of the robbery, Carpenter called him and told him that "I've got another store we can hit." (R330: TR 12/12/13, Green, Pg ID 2836-2837). According to Green, Carpenter got a stolen van to use for the robbery and asked others to join them who ultimately did not work out. (Id,  Pg ID 2837-2839).

According to Green, he, Carpenter, and Bell-Gill got Ernest Holt and Angelo Capeto to participate. (Id, Pg ID 2837, 2841). Green testified that Holt and Capeto drove to the store and went inside where they took cell phones. Green also testified that he, Bell-Gill and Carpenter parked nearby in a "lookout position" and, told Holt and Capeto when to go inside. (Id, Pg ID 2842-2843).

-10-

Inside the store, Capeto and Holt told employees to put the phones in laundry bags in the back of the store. (R327: TR 12/9/13, Amos, Pg ID 2356). Also according to Green, Capeto carried a .40 caliber handgun. (R330: TR 12/12/13, Green, Pg ID 2843). Capeto and Holt had the employees take the laundry bags outside to the van. (Id).

The phones were taken in Carpenter's vehicle to Bell-Gill's house for sorting (Id, Pg ID 2845), and then to Avi Mordechai's store to sell them. (Id).

### 3.   COUNTS 7 & 8

The Radio Shack store on Parkman Road in Warren, Ohio was robbed on March 4, 2011. Michael Green, and others, testified that Carpenter was there as a "look-out." (R330: TR 12/12/13, Green, Pg ID 2858; R328: TR 12/10/13, Foster, Pg ID 2506-25). Green testified that Carpenter suggested going to Warren because his friend, "Little James," lived there. (R330, TR 12/12/13, Green, Pg ID 2858-2859).

Green also testified that Carpenter asked his brother ,Timothy Sanders, to drive his van to drive to Ohio and recruited Juston Young, Foster, and "another couple guys [he] didn't really know" to go along. (Id, Pg ID 2860-2861). It was Green's testimony that Carpenter made arrangements for the gun used in the robbery after they all got to Ohio. (Id).

Green testified that they drove to Ohio on the evening of March 3, 2011 in Sander's mini-van.(Id, Pg ID 2861-2863; R328: TR 12/10/13, Foster, Pg ID 2506-2512). When they arrived, according to Green, Carpenter stole a Grand Cherokee to drive to the robbery and got a gun from "Little James." (R330: TR 12/12/13, Green, Pg ID 2865-2867).

On March 4, 2011, Sanders, Green, and Carpenter went to a Dollar Store to buy bags for the stolen phones and stopped in a Little Caesars in the same plaza as the Radio Shack. (Id, Pg ID 2874). The three then went to the parking lot to observe. (Id, Pg ID 2876-2879). Young, "D.L.," and "Tyshawn" went into the store and Foster was the get away driver. (R328: TR12/10/13, Foster, Pg ID 2515-2521).

After the robbery, the group met up at Little James' Ohio house, put the Jeep in a garage and sorted the phones. (Id, Pg ID 2523). All but Foster, who rode with the cell phones in someone else's car back to Detroit, returned to Detroit. (Id). According to Green, Mordechai turned him down this time so they all went to Hassanen Al-Hassuni's store in Hamtramck to sell the phones. (R330: TR 12/12/13, Green, Pg ID 2881-2883).

John Decker, the Radio Shack regional loss prevention manager for its Detroit region, testified that the Detroit region includes Michigan, Wisconsin, the

northern border of Indiana, and the northwest area of Ohio going as east to Cleveland. (R332, TR 12/13/13, Decker, Pg ID 2983-2992). The Detroit region received cell phone supplies from either Fort Worth, Texas or Dublin, Ohio. (Id, Pg ID 2989). The Warren, Ohio store was not in the Detroit region. (Id at Pg ID 2988). Decker testified that he had no responsibility for investigating the Warren, Ohio, robbery. (Id, Pg ID 2988-2989). According to Decker, after a robbery, replacement inventory is handled in one of two ways: "local product replacement [comes] from other stores within that community or area" or, a replacement order is sent from the corporate office in Fort Worth, Texas to one of Radio Shack's distribution "hubs." (Id,  Pg ID 2991-2992). There was no regional "hub" identified in the Eastern District of Michigan. (Id).

Prior to trial, in his Trial Brief, Carpenter argued that "[s]ince the criminal act and impact on commerce took place in the Northern District of Ohio, venue is not proper in the Eastern District of Michigan for Counts Seven and Eight." (R204: Trial Brief, Pg ID 1029-1031). He also requested a jury instruction regarding venue. (Id). Counsel for Carpenter attempted to discuss the issue of venue in his opening statement (R325: TR 12/5/13, Pg ID 2026), but the court prevented discussion of the issue. (Id, Pg ID 2027). The following day the court advised the jury that venue was an issue for Counts 7 and 8 and instructed that

-13-

they "should be aware of facts bearing upon location of actions during the trial." (R326: TR 12/6/13, Pg ID 2272-2273).

Carpenter also raised the venue issue for these counts in his Motion for Acquittal. (R242: Motion for Acquittal, Pg ID 1267-1270). His motion was denied. (R251: Order Denying Motion for Acquittal, Pg ID 1358-59).

### 4.    COUNTS 9 & 10

A Radio Shack store located on Woodward Avenue in Highland Park, Michigan, was robbed on April 5, 2011. (R328: TR 12/10/13, Wormley, Pg ID 2466). According to the trial testimony of Adriane Foster, Carpenter planned the robbery and got "a guy named Lou, D.L., and a white guy named Jake or Jack" and Timothy Jones, Carpenter's younger brother, to participate. (R328: TR 12/10/13, Foster, Pg ID 2526). According to Foster, Carpenter had Foster, D.L. and "Jake" go into the store, lock the door behind them, and take the employees to the back of the store to bag up the phones. (Id, Pg ID 2527). The group then took the phones to the minivan they were using, which Foster testified was stolen, and left. (Id, Pg ID 2528). Jones and Carpenter watched from across the street in Jones' vehicle. (Id, Pg ID 2531).

Following the robbery, the group got rid of the minivan and sold the phones to  Al-Hassuni, in Hamtramck. (Id).

### 5.   COUNTS 11 & 12

A T-Mobile store on Jefferson Ave in Detroit, Michigan was robbed on October 31, 2012. (R327: TR 12/9/13, Slade, Pg ID 2324-2327; Woods, Pg ID 2334-2336). According to Foster and Bell-Gill, Carpenter, Foster, Bell-Gill, and another guy named "Nick," were involved. (R328: TR 12/10/13, Foster, Pg ID 2535-41; R327: TR 12/9/13, Bell-Gill, Pg ID 2390-2398). Bell-Gill testified that he and Carpenter were lookouts while Foster and Nick went into the store with a gun to take the phones. Bell-Gill testified Carpenter purchased the gun used in the robbery. (R327: TR 12/10/13, Bell-Gill Pg ID 2392-2396).

The group met afterward at a house on McCormick Street in Detroit to put phones into Bell-Gill's car. Four of them then went to Al-Hassuni's to sell them. (Id,  Pg ID 2396-2403).

### 6.   COUNTS 13 & 14

The Radio Shack store on 8 Mile Road and Gratiot in Detroit, Michigan, was robbed on December 1, 2012. (R325: TR 12/5/13, Williams, Pg ID 2035). Jesse Dismukes and David Holland both went into the store with guns. Patrick Heard acted as a driver. Adriane Foster and Carpenter watched from across the street. (R325: TR 12/5/13, Dismukes, Pg ID 2078; R326: TR 12/6/13, Heard, Pg ID 2238-2245).

Earlier in the day, Foster contacted Dismukes, Holland, and Heard about their participation. (R325, TR 12/5/13, Dismukes, Pg ID 2077-78; R326: TR 12/6/13, Holland, Pg ID 2161; R326, TR 12/6/13, Heard, Pg ID 2236). Foster and Carpenter picked up Holland, Heard, and Dismukes in Carpenter's Ford Explorer. Foster and Carpenter had Heard drive Holland and Dismukes to the store in a stolen minivan. (R326: TR 12/6/13, Heard, Pg ID 2237-2241). According to Heard, Carpenter gave guns to Dismukes and Holland and told them to "take the employees to the back [of the store] and get all of the iPhones." (Id, Pg ID 2238, 2241). Heard testified that it was Carpenter who told them that they would meet at his "baby mama's house" after the robbery and "take the phones to Hamtramck." (Id, Pg ID 2238).

The group drove to the Radio Shack store in Eastpointe. Michigan where Dismukes, Holland, and Heard parked at a nearby Burger King and got instructions from Carpenter and Foster who were parked across the street. (R325: TR 12/5/13, Dismukes, Pg ID 2091-2092). Dismukes and Holland went into the store and told the employees to put the phones into blue laundry bags in the back of the store. (Id, Pg ID 2036-2039). The phones were then taken out to the minivan.

The group met afterward at a house to get rid of the van and guns and put

the phones in the Explorer used to take them to Hamtramck where Carpenter arranged their sale. (Id, Pg ID 2096-2098).

## C.    TESTIMONY REGARDING CELL TOWERS HISTORIC CELL PHONE DATA

On December 13, 2013, FBI Special Agent Christopher Hess testified as an expert about the operation of cell towers. (R332: TR 12/13/13, Hess, Pg ID 2994-3088). He told the jury about his prior successes using cellular technology to track down suspects in  several kinds of cases. (Id, Pg ID 2999-3001). Hess also told the jury that he had over 400 hours of training on cellular technology and had testified as expert on cell tower analysis about 30 times. (Id,  Pg ID 2997-3001).

Hess opined based on his experience that cell tower analysis is both accurate and "reliable." (Id, Pg ID 3000). He then explained how it works: a cellular telephone is a two-way radio that transmits and receives a frequency, (Id, Pg ID 3002); frequencies are tuned with a cell phone carrier; a Verizon phone, for example, tunes to Verizon cell towers; and, cell companies share cell towers. (Id). His explanation continued:

> Cell towers are broken down into what they call sectors. In most cases, a cell site will cover 360 degrees. And often the tower is broken down into three sectors which allows for an increase in usage on the tower. So that if somebody was on the north side of the tower, they use the north side of the tower, the north sector. The number of towers in an area is largely dependent upon the number of subscribers

in the area.

(Id, Pg ID 3003). These towers have ranges of as much as 20 miles and, in densely populated areas like Detroit, may be limited to.5 to 2 miles. (Id, Pg ID 3005). Referring to the data he gets from providers, Hess told the jury that "in most instances now, the companies provide you – provide information on the tower where the call originated and the tower where the call terminated." (Id, Pg ID 3008).

For this investigation, Hess testified that he became involved "to review two telephone numbers to try and determine if, in fact, they were in the area of a series of robberies, in and around the time of the robbery." (Id, Pg ID 3009). He then testified about the data related to Counts 1-4 and 7-10, and presented his report, Government Exhibit 57, that includes the "Basic Principals" of cell tower analysis and maps of the location data for Carpenter's phone during the alleged times pertinent to each of those robberies. (Gov't Exh 57 - Cellular Analysis, Appendix 001-015). The maps were created by Hess. (R332: TR 12/13/13, Hess, Pg ID 3014-15).

With that background, Hess testified that Carpenter's phone communicated with two cell towers around the time of the robbery alleged in Counts 1 and 2. (Id, Pg ID 3016). According to Hess, the cell sites depicted in his maps in Exhibit 57

-18-

were "consistent with the geographic area that encompasses the robbery scene" (Id, Pg ID 3015), and that the towers showed Carpenter traveling toward the Radio Shack near the time of the robbery. (Id, Pg ID 3017).

For Counts 3 and 4, Hess testified similarly that, based on his review of the call detail records, Carpenter's phone was located in close proximity to the T-Mobile store at the time of the robbery. (Id, Pg ID 3017-3020).

Hess testified in the same fashion that for the robbery in Warren, Ohio, alleged in Counts 7 and 8, Carpenter's cell provider, Metro PCS, did not have any coverage in Warren, Ohio, but [there was] a "roaming agreement" with Sprint, so Carpenter's phone was able to communicate with Sprint towers. (Id, Pg ID 3021). Based on his review of Sprint cell tower records, Hess opined that there was call activity on Carpenter's phone within about ¾ of a mile of the Radio Shack in Warren, Ohio, placing Carpenter at the scene of the Ohio robbery. (Id, Pg ID 3022).[1]

Finally, Hess testified about the location of Carpenter's phone at the times of the robbery in Highland Park, Michigan, charged in Counts 9 and 10. (Id, Pg ID 3022-3026). Based on his review of the call detail records, Hess testified that there

---

[1] Hess also gave his analysis of Timothy Sander's cell phone location data, for Counts 7 and 8, that Sanders (and his phone) were in Warren, Ohio at the time of the robbery. (Id, Pg ID 3011-3014).

-19-

was call activity prior to the robbery and that the two towers Carpenter's phone communicated with at the relevant times were in the geographic area consistent with the robbery scene and toward the Hamtramck location where witnesses testified Carpenter went to sell the phones. (Id. Pg ID 3024-3025).

The Government relied upon this testimony during closing argument. (R333: TR 12/16/13, Closing Argument, Pg ID 3213-3214, 3265).

## D.    SENTENCING

On April 16, 2014, the district court sentenced Carpenter to a total term of 1,395 months – or 116.25 –  years, including 135 months on the Hobbs Act convictions, Counts 1, 3, 7, 9, 11, and 13[2], to run concurrent to each other, 60 months on the Count 4 §924(c) conviction, and a consecutive mandatory 25 year sentence on each of the other §924(c) charges in Counts 8, 10, 12, and 14. (R301: Judgment, Pg ID 1600-1605). The sentence also included concurrent 3 year terms of supervised release on each count. (Id, Pg ID 1603). The Judgment was entered on April 28, 2014. (Id).

Carpenter objected to the proposed mandatory minimum sentences based on

---

[2] Carpenter's Sentence Guideline range determined by the Court was 1,395 to 1,428 months. (R336: TR 4/16/14, Sentencing Pg ID 3334). The guidelines range for his §1951 convictions alone was determined to be 135 to 168 months. (Id).

§924(c) on grounds of Separation of Powers and the Eighth Amendment. (R298: Defendant's Sentencing Memo, Pg ID 1579-1594). Carpenter attached a chart to his memorandum listing the sentences for eleven other defendants in his case who had pled guilty (Id, Pg ID 1594), to demonstrate the disparity in outcome in his case, where he had rejected the government's plea offer, when compared to the outcomes for his co-defendants who had accepted them. Alternatively, he asked the court to take the mandatory term into account as a reason to vary Carpenter's guideline sentence below the determined guideline range.[3]

Carpenter's former co-defendants, who plead guilty and testified against him, and would have faced terms of incarceration similar to his had they opted to go to trial, received far lower sentences. (R298: Exh A - Sentence Comparison, Pg ID 1594). For example, Michael Green, who masterminded the alleged robbery scheme (R330, TR 12/12/13, Green, Pg ID 2819-20), pled guilty to two counts of §1951 and two counts of §924(c). Green's Rule 11 Agreement had an agreed upon guideline range of 454 to 471 months. (R38: Green Rule 11, Pg ID 85-103). He was then sentenced to 471 months and has reason to expect a substantial departure from that number for his cooperation. (R92: Green Judgment, Pg ID 516-521).

---

[3] *United States v. Franklin,* 499 F3d 578, 587-89 (6th Cir. 2007)(Moore, concurring). The court refused. (R336: TR 4/16/14, Sentencing, Pg ID 3336-3737, 3346-3347).

-21-

Similarly, Adriane Foster's Rule 11 Agreement had a guideline range of 421-430 months, with an agreement from the Government, pursuant to FRCrP Rule 11(c)(1)(C) that his sentence may not exceed 425 months. (R96, Foster Rule 11, Pg ID 534-550). He received a total sentence of 240 months, and similarly, is still waiting for his Rule 35 reduction. (R282: Foster Judgment, Pg ID 1445-1450).

Sedric Bell-Gill plead guilty to two §1951 violations and one count of §924(c). (R255: Bell-Gill Rule 11, Pg ID 1364-1389). His agreed upon guideline range was 184-209 months. His sentence was 120 months. (R288: Bell-Gill Amended Judgment, Pg ID 1480-1485).

## SUMMARY OF THE ARGUMENT

In Issue I, Carpenter argues that the Government's acquisition of over five months of cell site location information, pursuant to 18 USC § 2703(d), without a warrant or probable cause, violated his Fourth Amendment right to be free from unreasonable searches and seizures. Like the type of long-term location surveillance the Supreme Court held to be unconstitutional in *United States v. Jones*, 132 S Ct 945 (2012), cell site location records reveal vast amounts of information about an individual's private life. With this information, the government can find out who an individual calls, who is calling him, and where he

-22-

was located when he made or received those calls. When the government obtains these records for months of calls, it can surmise a person's everyday habits and activities, i.e., when he makes or receives calls at home, the places he frequents, including businesses, employment, worship and homes of family members; and, by examining the phone numbers of outgoing and incoming calls, an individual's personal relationships. Obtaining these records without a warrant or probable cause violated Carpenter's reasonable expectation of privacy and, therefore, is a search within the meaning of the Fourth Amendment, because it permitted the government to invade "the privacies of life." *Riley v. California*, 134 S Ct 2473, 2494 (2014) citing *Boyd v. United States*, 116 US 616, 630 (1886). Following the well established principle of Fourth Amendment jurisprudence "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 US 347, 357 (1967), the Government's acquisition of Carpenter's comprehensive cell site location information without a warrant, and its use as evidence against him at trial, violates the Fourth Amendment.

In Issue II, Carpenter submits that the Government failed to present sufficient evidence, as required by US Const., Art. III, §2, cl. 3 and Amend. VI and FRCrP 18, to satisfy its burden to establish, by a preponderance of the

-23-

evidence, that venue was proper in the Eastern District of Michigan for Counts 7 and 8 concerning the Radio Shack store robbery in Warren, Ohio. For Count 7, the Government failed to present *any* evidence that the March 4, 2011 Ohio robbery had any impact on commerce within the Eastern District of Michigan. There was no evidence presented of any connection between the Warren, Ohio Radio Shack store and the Eastern District of Michigan. Similarly, for Count 8, the Government presented no evidence that the gun connected to the robbery was ever used, possessed, or carried in the Eastern District of Michigan. Therefore, because the Government failed to establish venue was proper in the Eastern District of Michigan, Carpenter must be acquitted of Counts 7 and 8.

In Issue III, Carpenter argues that the district court erred by preventing defense counsel from refreshing the memory of Government witness Adriane Foster with use of his February 5, 2013 FBI 302 containing his prior inconsistent statement given to the FBI in a pre-trial interview. The court's error prevented counsel from pursuing further cross-examination about the statement and denied him the opportunity to impeach Foster with his prior inconsistent statement. This error was prejudicial to Carpenter's defense because credibility of Government witness Foster, who pled guilty and agreed to cooperate to avoid an enormous prison sentence, was an important issue.

Finally, in Issue IV, Carpenter argues that his sentence of 1,395 months – or 116.25 years – violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Separation of Powers doctrine. (R301, Judgment, Pg ID 1600-1605). His sentence, which was only made possible by the  Government's charging of multiple 18 USC §924(c) counts and the consecutive mandatory minimum penalties provided by the statute, is grossly disproportionate to the offenses committed. The Government's charging decisions usurped a fundamental judicial function by preventing the sentencing judge from exercising his constitutional prerogative at sentencing to determine the length of sentence as a measure of punishment, deterrence and any mitigation. Carpenter, therefore, requests that this Court conclude that his sentence violates the Eighth Amendment and the Separation of Powers doctrine.

<u>**ARGUMENT**</u>

**ISSUE I:**    **GOVERNMENT ACQUISITION OF CARPENTER'S HISTORIC CELL PHONE LOCATION DATA FOR A FIVE MONTH PERIOD, WITHOUT A WARRANT, VIOLATES THE FOURTH AMENDMENT.**

**Standard of Review**: When reviewing the denial of a motion to suppress, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Stepp*, 680 F3d 651, 660 (6th Cir. 2012).

It is a well established principle of Fourth Amendment jurisprudence "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 US 347, 357 (1967). The Supreme Court has adopted a two-part test to determine whether a person's expectation of privacy is legitimate. *Id* at 361 (Harlan, J., concurring). First, the individual must have a subjective expectation of privacy in a place or thing. *Id*. Second, society must be prepared to recognize that expectation as objectively reasonable. *Id*. The Court applies this test in circumstances where technological advances have made possible "nontresspassory surveillance techniques." *United States v. Jones*, 132 S Ct 945, 955 (2012) (Sotomayor, J. concurring); *Id* at 964 (Alito, J. concurring in the judgment).

The evidence at issue in this case, to which Carpenter objected before trial, includes records the Government obtained – and used at trial – from Carpenter's

cell phone service providers by using a court order based on the Stored Communications Act ("SCA"), 18 USC §§2703(c) and (d),but without a warrant or a showing of probable cause.  (R221-3: Exh B, Application and Order - Carpenter Metro PCS, Pg ID 1153-63; R221-4: Exh C - Application and Order - Carpenter Sprint, Pg ID 1164-1174). Using the Act, the Government could have attempted to obtain Carpenter's subscriber service records by means of either a warrant under §2703(c)(A), or an order under §2703(d). The order the Government chose to seek under subsection (d) only required it to show "that there are *reasonable grounds to believe* that the ... records or other information sought, are relevant and material to an ongoing criminal investigation." 18 USC §2703(d) (emphasis added).

The district court denied Carpenter's and Sanders' pre-trial motions to suppress on Fourth Amendment grounds, concluding that Carpenter had "no legitimate expectation of privacy" in his cell site data, (R227: Opinion & Order, Pg ID 1215-1218). Carpenter also objected to the reliability of Hess' testimony before trial under *Daubert v. Merrill Dow,* 509 US 579 (1993); *see also United States v. Evans*, 892 F Supp 949, 956 (ND Ill, 2012)(holding that testimony related to the theory of "granulization" was inadmissible and, therefore, unreliable)(R211: Motion In Limine To Exclude Lay and Expert Opinion Testimony, Pg ID 1058-

-27-

1085).

The Government then called FBI Agent Hess as an expert witness at trial who opined about the physical location of Carpenter's phone and the cell towers it used during four of the robberies (Counts 1-4 and 7-10), the specific antenna used at each cell site, and the direction of the antennas' coverage. (R332: TR 12/13/13, Hess, Pg ID 3015-3025; Gov't Exh 57 - Cellular Analysis, Appendix 001-015). Hess also estimated the range of antenna coverage using the proximity of other towers. (Id). Hess repeatedly opined on the locations of Carpenter's phone during the robberies.

The records about which Hess testified covered about 7,500 calls, both incoming and outgoing, and the identification of cell towers Carpenter's phone communicated with during the duration of each of those calls. The records Hess reviewed allowed him to assist the Government in its investigation to surmise the details of Carpenter's life including places he commonly visited, his home and homes of family members. The records revealed the details of personal relationships by identifying who he called and who called him. As discussed below, the Order violated Carpenter's Fourth Amendment protections. *Katz v. United States*, 389 US 347, 357 (1967); *United States v. Jones*, 132 S Ct 945 (2012); *Kyllo v. United States*, 533 US 27, 34 (2001)(noting that evolving

-28-

technology must not be permitted to "erode the privacy guaranteed by the Fourth

Amendment.").

   A.   USE OF AN ORDER TO OBTAIN FIVE MONTHS OF DETAILED CELL
        SITE LOCATION DATA IS A "SEARCH" UNDER THE FOURTH
        AMENDMENT.

New technologies have given the government unprecedented access to

private information. The Supreme Court has responded by applying Fourth

Amendment limitations. *See Riley v. California*, 134 S Ct 2473, 2494-2495 (2014)

*Jones*, 132 S Ct at 945 (2012); *Kyllo,* 533 US at 34-40.

Although the court majority in *Jones*, 132 S Ct at 948, used a trespass-based

rationale for its conclusion that the installation a GPS tracking device on a

suspect's vehicle for 28 days was a "search" requiring suppression of electronic

location data obtained from the installation, Jones, 132 S Ct at 949, five Justices

agreed that prolonged government vehicle location tracking is subject to Fourth

Amendment limitations under the *Katz* reasonable expectation of privacy

rationale. 132 S Ct at 964 (Alito, J.); *Id* at 955 (Sotomayor, J.). The plurality is

premised on Fourth Amendment privacy protection principles applied to advanced

electronic investigation techniques, *Id* at 963; and, is applicable here.

The Court applied similar principles in 2014 to what has quickly become the

ubiquitous use of cell phones in all aspects of our daily lives. *Riley v. California*,

134 S Ct at 2494-2495. It emphasized in *Riley*, the necessity of protecting individual privacy interests from governmental investigative intrusions into the vast array of data stored within cell phones by the use of search warrants requiring careful judicial scrutiny.  The Court's holding emphasized the breadth of information about all aspects of personal lives[4] that can be extrapolated from cell phones:

> a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form.

*Id* at 2491.

Cell site location data analysis is like an examination of the contents of cell phones. It reveals the details of a person's private affairs, much like examination of data obtained through long-term GPS monitoring of a personal motor vehicle. *See United States v. Maynard*, 615 F3d 544, 562 (DC Cir. 2010) aff'd in part sub nom. *Jones*, *supra*. The data from long-term surveillance discloses much about personal affairs that commonly held sensibilities regard as private:

---

[4] "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Id*. at 2494.

> Repeated visits to a church, a gym, a bar, or a bookie tell a story not told by any single visit, as does one's not visiting any of these places over the course of a month. The sequence of a person's movements can reveal still more; a single trip to a gynecologist's office tells little about a woman, but that trip followed a few weeks later by a visit to a baby supply store tells a different story. A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups—and not just one such fact about a person, but all such facts.

*Maynard*, 615 F3d at 562, aff'd in part sub nom. *Jones*, supra.

But in many ways, the data from cell sites reveals even more, because we routinely carry our cell phones everywhere. "Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception. According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." *Riley*, 134 S Ct at 2490; *see also United States v. Powell*, 943 F Supp 2d 759, 777 (ED Mich. 2013)(There are practical limits on where a GPS tracking device attached a person's vehicle may go. A cell phone, on the other hand, is usually carried with a person *wherever* they go)(emphasis in original).

An 18 USC §2703 order, as in this case, allows skillful government attorneys and investigators to "connect the dots," using data disclosing both

incoming and outgoing calls and how long they last

The court, in *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F3d 304, 317–18 (3rd Cir.2010)(*In Re Application*), although reversing a magistrate's denial of a request to furnish records pursuant to §2703(d), acknowledged that "circumstances" can "require a warrant showing probable cause. . ." *Id*. at 319. Carpenter submits that appropriate circumstances of the kind referred to there are present here.

The *In Re Application* court rejected a government argument based on *Smith v. Maryland*, 442 US 735, 743-44 (1979), that individuals have no legitimate expectation of privacy in cell site location data or call detail records because call information is voluntarily turned over to third parties. "[A] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." This is so because "it is unlikely that cell phone customers are aware that their cell phone providers collect and store historical location information." *In Re Application,* 620 F3d at 317. Therefore, "when a cell phone user makes a call, the only information that is voluntarily and knowingly conveyed to the phone company is the number that is dialed, and there is no indication to the user that making that call will also locate the caller." *Id*. That is, "when a cell phone user receives a call, he hasn't voluntarily exposed anything at all." *Id*. at

-32-

317-18.

In this case, however, the district court adopted the Government's argument and primarily relied on *United States v. Skinner*, 690 F3d 772 (6ᵗʰ Cir. 2012) to deny Carpenter's motion to suppress.

*Skinner*, much unlike Carpenter, dealt with "drug runners . . . [who] used pay-as-you-go (and, thus, presumably more difficult to trace) cell phones to communicate during the cross-country shipment of drugs." 690 F3d at 774. Such cheap and disposable phones are incapable of producing the breadth of information that can be mined from long-term data available from a standard cell service provider. Also, the surveillance in *Skinner* was only two months. *Id* at 775-76. The records here, covered five months and over 7,500 phone calls.

Over five months of Carpenter's cell site location information obtained by the Government without a warrant or probable cause, is a Fourth Amendment "search." *Katz*, 389 US at 357; *Jones*, 132 S Ct at 964 (Alito, J.); *Id* at 955 (Sotomayor, J.). Disclosure of who Carpenter called, who called him and where he was at those times, permitted the Government to invade "the privacies of life." *Riley*, 134 S Ct at 2494. Because "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *Katz*, 389 US at 357, the acquisition of Carpenter's cell

phone records in this manner was a violation of the  Fourth Amendment requiring suppression.

Carpenter should be granted a new trial.

### B.    THE GOOD FAITH EXCEPTION DOES NOT APPLY.

In it's opinion denying Carpenter's motion to suppress (R227: Opinion & Order,  Pg ID 1213-1224), the court provided no explanation for its footnote observation that the Government claim of good faith could have served as another reason to deny Carpenter relief.[5]  "Good faith" here was of no benefit to the Government. *United States v. Weaver*, 99 F3d 1372, 1380 (6th Cir. 1996); (R221-3: Exh B, Application and Order -Carpenter Metro PCS, Pg ID 1153-63; R221-4: Exh C - Application and Order - Carpenter Sprint, Pg ID 1164-74).

As the Sixth Circuit noted in *United States v. Weaver*, 99 F3d at 1380, reliance on the "good faith" has at least four recognized exceptions.[6]

---

[5] The district court only wrote that it agreed with the Government's contention that the good faith exception was "an additional basis for denying the motion." (R227, Opinion & Order, Pg ID 1216, fn. 1).

[6] [F]irst, if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," [*Leon*, 468 US] at 914; second, if "the issuing magistrate wholly abandoned his judicial role," *Id*; third, if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Id*. at 915 (citations omitted), or in other words, where "the warrant application was supported by [nothing] more than a 'bare bones'

The essence of these is that:

> good-faith does not apply in circumstances where 'the officer will have no reasonable grounds for believing that the warrant was properly issued.' Thus, an officer would not 'manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'

*United States v. Carpenter,* 360 F3d 591, 595 (6th Cir. 2004) (quoting *United States v. Leon,* 468 US 897 (1984)).

As the *Weaver* panel explained, affidavits that are "so lacking in indicia of probable cause" have come to be known as "bare bones" affidavits because they offer only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. 99 F3d at 1378. Use of such an application is inconsistent with "good faith."

Here, the Government did not seek a warrant,[7] but instead opted for the lesser showing pursuant to 18 USC §2703(d). In support of its application under that section of the act, it stated only that: (1) on April 6, 2011, officers from the Detroit Police Department "arrested four individuals believed to be involved in a

---

affidavit," *Id*; and fourth, if the "warrant may be so facially deficient - *i.e.*, failing to particularize the place to be searched or the things to be seized . . . ," *Id*. at 923 (citations omitted).

[7] 18 USC §2703(c)(A).

series of armed robberies of Radio Shack and T-Mobile stores in Detroit, MI;" and, (2) a co-operating defendant was interviewed about his involvement in the robberies and admitted involvement in eight different robberies that started in December 2010-March 2011 and identified 15 other individuals who had been involved in the robberies. (R221-3: Exh B, Application and Order -Carpenter Metro PCS, Pg ID 1155-56). The application does not say that the "cooperating defendant" identified Carpenter as a participant in the robberies. It merely asserts that the cell site location information will "further the Federal Bureau of Investigation and provide evidence that Timothy Sanders, Timothy Carpenter, and other known and unknown individuals are violating [18 USC §1951]." (Id, Pg ID 1156).

It was the Government's option under the statute to obtain a warrant, but it lacked probable cause to do so. In contrast to *Skinner*, where the affidavits "were nineteen pages and five pages long," 690 F3d at 787 (Donald, J., concurring in part and concurring in judgment), the application here has only two paragraphs of factual information. (R221-3: Exh B, Application and Order -Carpenter Metro PCS, Pg ID 1155-57); and, no information about any relationship of Carpenter to the alleged robbery scheme. (Id). However, with presumed knowledge of breadth of private information it would reveal, government counsel nevertheless sought

-36-

and obtained over five months of cell site location data.  (Id, Pg ID 1157; R332:

TR 12/13/13, Hess, Pg ID 2999-3001);[8] *see also Maynard*, 615 F3d at 562; *Jones*,

*supra*.

The Government's deliberate tactic should not be regarded as "good faith."

*See Skinner*, 690 F3d 772, 788 (6th Cir. 2012)(Donald, J., concurring in part and

concurring in judgment)("The fact that officers had probable cause means that this

is not a case in which officers deliberately and wrongfully sought a court order,

which requires a less demanding showing than probable cause, in the hopes of

gaining some advantage to which they were not entitled.").

This case is obviously unlike those situations in which police officers are

required to make difficult factual or legal decisions "on the fly" and so may be

deemed to have acted in good faith when they make a mistake. *See Heien v. North*

*Carolina*, 135 S Ct 530, 539 (2012)("A law prohibiting 'vehicles' in the park

either covers Segways or not, but an officer will nevertheless have to make a quick

decision on the law the first time one whizzes by.")(internal citation omitted);

*Herring v. United States*, 555 US 135, 139 (2009). At the least, the present case

involves an application prepared at the leisure of an experienced government

---

[8] Agent Hess testified that he used cell site technology in over 100 cases
and testified as an expert on the issue approximately 30 times. (R332: TR
12/13/13, Hess, Pg ID 2999-3001).

attorney who could not realistically claim mistake of law.

Finally, the Supreme Court, in *Riley*, recognized the burden enforcement of the warrant requirement may place on criminal investigations by enforcing the requirement for warrants, but found that such a burden was justified:

> We cannot deny that our decision today will have an impact on the ability of law enforcement to combat crime. Cell phones have become important tools in facilitating coordination and  communication among members of criminal enterprises, and can  provide valuable incriminating information about dangerous  criminals. Privacy comes at a cost.

*Id* at 2493.

**ISSUE II:**      **THE GOVERNMENT FAILED TO  ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT VENUE WAS PROPER IN THE EASTERN DISTRICT OF MICHIGAN FOR COUNTS 7 AND 8.**

**Standard of Review**: This Court reviews *de novo* a district court's denial of a motion for acquittal pursuant to FRCrP Rule 29, but that decision will be affirmed if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *United States v. Stafford*, 721 F2d 380, 390 (6th Cir. 2013). The Court will reverse a judgment due to insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole. *Id*.

The prosecution bears the burden of proving venue for each count by a preponderance of the evidence. *United States v. Beddow*, 957 F2d 1330, 1335 (6th Cir. 1992). Because there was a failure of proof that the essential elements of the

offenses charged in Counts 7 and 8 occurred in the Eastern District of Michigan, the court erred by denying Carpenter's motions for acquittal on this ground.

A defendant's right to be tried in the state and district where the charged crime "shall have been committed" is grounded in the Constitution. US Const., Art. III, §2, cl. 3 and Amend. VI and FRCrP 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). The Government and the district court failed to comply with this rule.

"Questions of venue in criminal trials, therefore, are not merely matters of formal legal procedure." *United States v. Johnson*, 323 US 273, 276 (1944). Venue is appropriate in the federal district where "the conduct comprising the essential elements of the offense occurred." *United States v. Wood*, 364 F3d 704, 710 (6th Cir. 2004). Venue may be a question of fact to be decided by the jury. *United States v. Miller*, 111 F3d 747, 749 (11th Cir, 1992).

"Where venue is appropriate for the underlying crime of violence, so too it is for the §924(c)(1) offense" *United States v. Rodriguez-Moreno*, 526 US 275, 282 (1999). Therefore, venue for the §924(c) count is only proper where venue is proper for the robbery.

Whether the government has met its burden to establish venue is determined

-39-

by using a two-step analysis: (1) a determination of the locus delicti of the particular crime at issue, and (2) a determination of "the location of the commission of the criminal acts." *United States v. Davis*, 689 F3d 179, 185 (2nd Cir. 2012) citing *Rodriguez-Moreno*, 526 US at 279-280; *see also Cabrales*, 524 US at 6-7 ("[T]he locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it."). If an offense, unlike the present one, is one which by definition does not consist of a single act, venue may be in any district where the charged offense "was begun, continued, or completed." 18 USC §3237(a). However, "[t]o comport with constitutional safeguards . . . the language [of the statute] has been construed to require "substantial contacts" considering the site of the defendants' acts, the elements and nature of the crime, the locus of the effect of the conduct, and the suitability of each district for accurate factfinding." *Id* at 186, citing *United States v. Reed*, 773 F2d 477, 481 (2nd Cir, 1985).

In identifying the "conduct constituting" the offense for the Hobbs Act robbery as charged in Count 7, the first step then is to analyze the words of the statute. *Davis*, 689 F3d at 186. "The Hobbs Act prohibits, among other things, 'in any way' or degree obstruct[ing], delay[ing], or affect[ing], commerce or the movement of any article or commodity in commerce, by robbery or extortion." *Id*.

-40-

(citing 18 USC §1951). The statute defines "robbery" to mean "the unlawful taking or obtaining of personal property from the person or in the presence of another . . . by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 USC §1951(b)(1). "Because the Hobbs Act criminalizes a particular type of 'robbery'–i.e., one that 'obstructs, delays, or affects commerce,'–venue for the substantive Hobbs Act charge is proper in any district where interstate commerce is affected or where the alleged acts took place." *Davis*, 689 F3d at 186; *see also United States v. Bowens*, 224 F3d 302, 313 (4th Cir. 2000)("[I]n a prosecution under the Hobbs Act, venue is proper in any district where commerce is affected because the terms of the statute itself forbid affecting commerce in particular ways.").

Second, the court must then "discern the location of the commission of the criminal acts." *Rodriguez-Moreno*, 526 US at 279-280. The robbery of the Radio Shack charged in Count 7 took place in Warren, Ohio in the Northern District of Ohio. Where the offense is one that is completed, the court should look to the district where the offense occurred, here, the Northern District of Ohio. *United States v. Mikell*, 163 F Supp 2d 720, 733 (ED MI 2001) (J. Cleland).

The Government presented no evidence that the robbery of a Radio Shack in Warren, Ohio (Count 7) had any impact on commerce in the Eastern District of

-41-

Michigan. Instead, the evidence presented in the Government's case-in-chief showed that everything that was allegedly used to commit the robbery, including the firearm and laundry bags used in the robbery, were obtained in Ohio and that nothing was brought from the Eastern District of Michigan. The robbery was completed in Ohio.

Similarly, with respect to Count 8, the Government established no connection between the gun that was used to commit the robbery in Warren, Ohio and the Eastern District of Michigan. Indeed, the testimony presented during the Government's case-in-chief established that a gun was obtained in Ohio and left in Ohio after the robbery. (R330: TR 12/12/13, Green,  Pg ID 2860-2861, 2865-2867 2874). There is simply no evidence that the gun was ever used, possessed, or carried in the Eastern District of Michigan.

The Government's Radio Shack witness, John Decker, Regional Loss Prevention Manager, testified about a loss to the store in Ohio. (R332: TR 12/13/13, Decker, Pg ID 2983-92). His testimony that the loss could have affected the Radio Shack corporate business established no connection to the Eastern District of Michigan. The stores were in different regions and there was no testimony about a supply "hub" in Michigan. (Id, Pg ID 2988, 2991-2992). There was no evidence presented of any connection between the Warren, Ohio Radio

-42-

Shack store and the Eastern District of Michigan.

**ISSUE III:    A NEW TRIAL IS REQUIRED BECAUSE CARPENTER WAS DENIED THE OPPORTUNITY TO ESTABLISH THAT ADRIANE FOSTER LIED ABOUT CARPENTER'S ROLE IN THE WARREN, OHIO ROBBERY.**

**Standard of Review:** This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Marrero*, 651 F3d 453, 471 (6th Cir. 2011).

During trial, defense counsel was denied the opportunity to refresh the memory of Adrian Foster regarding his prior inconsistent statement given to the FBI on February 5, 2013. (R328, TR 12/10/13, Foster, Pg ID 2578-2598; App 016-019, Foster 302) After Foster claimed no memory of making a different statement during his interview with FBI Special Agent Ruiz, counsel attempted to refresh his recollection of his statements during the interview with a copy of Agent Ruiz's 302 report of his interview. Both Government counsel and counsel for co-defendant Sanders objected arguing that Foster was not the author of the interview notes. The Court sustained the objection. It only allowed counsel for Carpenter to ask Foster if he previously told the FBI that Timothy Sanders (not Timothy Carpenter), planned the robbery of the Radio Shack in Warren, Ohio. The prohibition on using the 302 was a clear error and prejudiced Carpenter's ability to attack Foster's credibility and present a defense.

Federal Rule of Evidence 612 permits a party to use any "writing to refresh

[the] memory" of a witness "while testifying." In order to refresh a witness'

recollection a party may use *anything* to revive his or her memory. *See Cathey v.*

*Johns-Manville Sales Corp*, 776 F2d 1565, 1582 (6th Cir. 1985); *United States v.*

*Rappy*, 157 F2d 964, 967-68 (2nd Cir. 1946)(Hand, J.)("Anything may in fact

revive a memory: a song, a scent, a photograph, and allusion, even a past

statement known to be false."). Furthermore, a witness' recollection may be

refreshed by writings which are not admissible in evidence. *See United States v.*

*Barrata*, 397 F2d 215, 221-222 (2nd Cir. 1968); *Doty v. Elias*, 733 F2d 720, 724

(10th Cir. 1984)(witness permitted to use hearsay notes). Therefore, the fact that

Foster himself did not write down the notes of his interview with SA Ruiz in the

FD-302 is irrelevant and counsel should have been permitted to refresh Foster's

recollection regarding his previous statements to law enforcement.

Any further attempt to use evidence of Foster's prior statements concerning

the robbery without showing it to him first and then asking him if he recalled it,

was futile. FRE 613(b) provides that "[e]xtrinsic evidence of a witness's prior

inconsistent statement is admissible only if the witness is given an opportunity to

explain or deny the statement and an adverse party is given an opportunity to

examine the witness about it, or if justice so requires."  A witness's prior statement

includes records of meetings that contain inconsistent statements attributable to

the witness. *United States v. Adamson*, 291 F3d 606, 612-613 (9th Cir. 2002);

*Jankins v. TDC Management Corp., Inc.*, 21 F3d 436, 442 (DC Cir.

1994)(Impeachment evidence may also be found in records or reports prepared by

others but contain statements attributed to the witness.). Therefore, since

impeachment evidence can come from records or reports prepared by others, the

fact that the February 5, 2013 report was prepared by SA Ruiz is irrelevant and,

because the report contained statements attributable to Foster, counsel for

Defendant Carpenter should have been able to impeach him regarding his prior

inconsistent statement.

The error was prejudicial to Carpenter. Foster's credibility was an important

part of the Government's proof of Defendant Carpenter's involvement in the Ohio

robbery. Foster also testified about three robberies in other counts. Indeed, at trial,

only the testimony of his former co-defendants and store owner Hassanen Al-

Hassuni who testified about buying cell phone and who was not charged, provided

direct evidence of Carpenter's involvement in any of the robberies charged in the

Indictment. The jury could only convict Carpenter if it believed the testimony of

his former co-defendants. Of these, Adriane Foster and Michael Green were the

only Government witnesses who provided direct testimony of Carpenter's role in

the Ohio robbery. As is apparent from the jury's verdicts on Count 8 charging a

violation of 18 USC §924(c) for the Ohio robbery, Sanders bolstering of Foster's

credibility – and his version at trial that Sanders had only a minimal involvement –

won Sanders an acquittal on the Count 8 gun charge. It is also reasonable to infer

that the jury relied on Foster's testimony to convict Carpenter on both the Ohio

robbery and gun charge.

**ISSUE IV:    CARPENTER'S 1395 MONTH SENTENCE VIOLATES THE
CONSTITUTION.**

**Standard of Review**: A constitutional challenge to a sentence is reviewed
*de novo*. *United States v. Moore*, 643 F3d 451, 454 (6th Cir. 2012)**.**

Carpenter's 1,395 months – or 116.25 years is so grossly disproportionate to

his offenses of conviction as to violate both the Eighth Amendment and the

Separation of Powers doctrine. (R301: Judgment, Pg ID 1602).

The arbitrary and abusive use of the mandatory and consecutive sentence

provision of §924(c) by the prosecution is demonstrated here by a comparison of

Carpenter's sentence outcome to the sentences received, for example, by two of

his former co-defendants, Adriane Foster and Michael Green, who were originally

charged with offenses similar to Carpenter's, but who received enormously lesser

sentences as the result of plea agreements with the Government which promised

them fewer charges and potentially lesser time for their cooperation, admittedly a

common tactic, but here one that drastically reduced their exposure to sentences

from the virtual range of life-time incarceration, as was Carpenter's. (R298: Exh A -Sentence Comparison, Pg ID 1594). In exchange for pleading guilty and providing testimony against Carpenter, Carpenter's former co-defendants received drastic reductions in their potential sentences and, thereby, avoided hundred year sentences like Carpenter's that would have put them in custody well past their life expectancy. For example, Foster's Rule 11 Agreement had a guideline range of 421-430 months, with an agreement from the Government, pursuant to FRCrP 11(c)1(C) that his sentence may not exceed 425 months. (R96: Foster Rule 11, Pg ID 534-550). Foster testified at Carpenter's trial and received a total sentence about 56% lower than his guideline range, 240 months. (R282: Foster Judgment, Pg ID 1445-1450). Had Foster gone to trial on the charges against him in the Third Superseding Indictment, and assuming no additional counts from the Government, Foster would have faced a potential 57 year sentence for his §924(c) counts alone. (R78: 3rd Superseding Indictment, Pg ID 384-393). In addition, outside of the charges in the Third Superseding Indictment, Foster also testified about his involvement in the robbery in Warren, Ohio. (R328: TR 12/10/13, Foster, Pg ID 2506). Had he gone to trial, the Government likely would have charged him with this robbery bringing his potential sentence for §924(c) violations to 82 years.

Michael Green, who, according to his testimony was involved in eight

robberies, all with guns, pled guilty to four counts with an agreement from the Government for a downward departure for his substantial assistance. (R330, TR 12/12/13, Green, Pg ID 2815). If he had gone to trial of each of the gun charges to which he admitted, he would have faced 182 years for mandatory minimum terms. He has been sentenced so far to 471 months, or 39¼ years, but has not yet received the benefit of the Government's recommendation for a reduction for his cooperation. (R92: Green Judgment, Pg ID 516-521). If it is as much as a 50% reduction, his sentence at 236 months, will be effectively less that one-fifth of the life time (plus) sentence imposed on Carpenter.

With the mandatory minimum provision of 18 USC §924(c), the Government essentially has been accorded carte blanche over plea bargaining and sentencing, enabling it to coerce defendants to become witnesses in order to avoid life sentences and exposing defendants who refuse to cooperate to terms far in excess of natural life after convictions at trial. When defendants decline the government's offers to plead to lesser charges conditioned on agreements to cooperate, as in Carpenter's case it responds by filing superseding indictments that exponentially increase their sentencing exposure and, despite their level of culpability, personal history, or the seriousness of the offense, subject them to multiples of 25 year consecutive sentences pursuant to §824(c). (R310: TR 4/9/13,

Plea Conference, Pg ID 1649, 1654), (*Compare* R55, 1ˢᵗ Superseding Indictment, Pg ID 267-272, *with* R119, 4ᵗʰ Superseding Indictment, Pg ID 640-649).  At the same time, the use of §924(c) by the prosecution in this fashion, strips the judiciary of its traditional role in fashioning individualized sentences that are sufficient but not greater than necessary to fit the offense of conviction.

For the reasons discussed below, Carpenter respectfully requests that this Court conclude that in Carpenter's case this exceeds the scope of acceptable practices and violates the both the Eighth Amendment and the separation of powers doctrine.

### A.    EIGHTH AMENDMENT

As stated over three quarters of a century ago by the United States Supreme Court, "[I]t is a precept of justice that punishment for the crime should be graduated and proportioned to the offense." *Weems v. United States*, 217 US 349, 367 (1910). In more recent times, the court has found defects of constitutional magnitude in sentences which are disproportionate to the offense. For example, in *Coker v. Georgia*, 433 US 584, 592, n 4 (1977), the Court stated:

> Because the death sentence is a disproportionate punishment for rape, it is cruel and unusual punishment within the meaning of the Eighth Amendment even though it may measurably serve the legitimate ends of punishment and therefore is not valid for its failure to do so.

In *Rummel v. Estelle*, 445 US 263 (1980), the court upheld the constitutionality of a mandatory life sentence with the possibility of parole after 12 years. The court rejected the absence of violence in the crime being punished as the determinative factor of proportionality. Then in *Solem v. Helm*, 463 US 277 (1983), the court held that a non-capital sentence imposed on an adult was constitutionally disproportionate when the defendant was sentence to life imprisonment without parole for writing a check for $100 with no account, the latest of a string of minor offenses. The Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." That inquiry should be guided by objective factors such as the gravity of the offense and the severity of the punishment. *Id*. at 290-92. The court found it helpful to compare sentences imposed on other criminals in the same jurisdiction, as well as other jurisdictions. The difference between non-violent and violent crimes and negligent and intentional conduct were relevant inquiries. Subsequently, in *Harmelin v. Michigan*, 501 US 957 (1991), the court found that a mandatory life sentence without parole was not constitutionally disproportionate for the crime of possession of 672 grams of cocaine. Justice Kennedy's plurality opinion has been considered the "controlling" opinion on proportionality. See *Graham v. Florida*, 560 US 1 (2010). While recognizing that the cruel and

-50-

unusual punishment clause does apply to non-capital sentences, the court acknowledged that the "precise contours are unclear." The Sixth Circuit applies the "grossly disproportionate" test articulated by Justice Kennedy in *Harmelin* when reviewing an Eighth Amendment challenge in a non-capital case. *United States v. Hopper*, 94 F2d 419, 422 (6th Cir. 1991).

More recently, courts have been encouraged to refer to "the evolving standards of decency that mark the progress of a maturing society" to determine whether a mandatory minimum sentence is disproportionate as to violate the Eighth Amendment. See, *Miller v. Alabama*, 132 S Ct 2455 (2012)(mandatory life sentence without parole for youth constitutes cruel and unusual punishment in violation of Eighth Amendment); *Roper v. Simmons*, 543 US 551 (2005) (holding the Eighth Amendment is violated when capital punishment is imposed for crimes committed by persons under 18 years of age); *Kennedy v. Louisiana*, 554 US 407 (2008) (Eighth Amendment prohibits death penalty for rape of child where there was no death involved).

In the present case, comparing the seriousness of Carpenter's convictions to the penalty imposed, his sentence is grossly disproportionate. Although weapons were utilized jeopardizing the safety of employees and others, the danger never came to pass since the weapons were never discharged. Carpenter's sentence of

1,395 months – or 116.25 years (R301, Judgment, Pg ID 1602) is excessive and disproportionate under the Eighth Amendment.

## B.    SEPARATION OF POWERS

By explicit language in the Constitution, each branch of the government, the legislative, executive and judicial branches, has its own powers and authority. *I.N.S. vs. Chadha,* 462 US 919, 951 (1983).

The mandatory consecutive minimums as set forth in 18 USC §924(c) violate the separation of powers doctrine as applied in this case. By enactment of the statute, Congress has stripped the judiciary of its constitutional and judicial prerogative in the sentencing process. The statute effectively delegates to the prosecutor both the authority to prosecute and sentence, all within the Executive Branch. That is, the prosecutor has decided when and if to charge particular offenses triggering the mandatory consecutive terms. Here, the Government, through plea bargaining, provided for enormous disparities in outcomes for defendants who pled guilty and particularly for those who cooperated, disproportionate to the value of cooperation. (R298: Exh A - Sentence Comparison, Pg ID 1594). It is one thing to suggest that the value, in real terms, of a defendant's agreement to plead and to cooperate may be measured in terms of a percentage of his potential sentence exposure, say 25% to 50%; it is another thing

when the actual outcome provides a sentence that may be 60 to 80 years or more lower than the sentence imposed on Carpenter (1,395 months versus 240 months, for example). In doing so, the executive branch has been allowed to totally usurp the sentencing discretion of the judiciary.

While it is beyond dispute that Congress has the power to fix the sentence for a federal crime, the Court in *Mistretta v. United States,* 488 US 361 (1989), reiterated that "the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Id.* at 380. The Supreme Court, recognizing that the courts are to employ a "flexible understanding of separation of powers," held that the promulgation of binding determinate sentencing guidelines by the Sentencing Commission, was consistent with the separation of powers. The *Mistretta* court directed courts to "up[hold] statutory provisions that to some degree commingle the functions of Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* at 382. The court added that had Congress conferred responsibility for promulgating guidelines to the Executive Branch, the constitutionality of assigning judicial responsibilities to the Executive Branch by uniting "the power to prosecute and the power to sentence within one Branch" would be called into question. *Id.* at 391 n 17.

In recent years, the judiciary's discretion in sentencing, in many cases, has

been virtually eliminated by the substantial increase in mandatory minimum sentencing. It is Carpenter's contention that the mandatory minimum statute at issue is unconstitutional here because Congress has created a sentencing system that has stripped the judiciary of its historic role in the sentencing process and has transferred that judicial power to the executive branch. Therefore, even if this Court were to conclude that Carpenter's sentence is not inconsistent with the Eighth Amendment's prohibition against cruel and unusual punishment, the Court should still find such a sentence unconstitutional as a violation of the separation of powers doctrine.

Carpenter acknowledges that in the context of the imposition of a single mandatory minimum sentence, the Sixth Circuit has "flatly rejected" a separation of powers argument. See, *United States v. Cecil,* 615 F3d 678, 696 (6th Cir. 2010) and cases cited therein. *See also*, *United States v. Jamerson,* 536 Fed Appx 606, 610 (6th Cir. 2013).

The point here, though, is simply this. It is one thing to "curtail" judicial discretion in sentencing. It is a completely different scenario when, as here, the judge's discretion to impose a sentence has been completely eviscerated by the prosecutor's exercise of power via its charging power to trigger specific mandatory consecutive minimums, requiring a sentence beyond the statutory

maximum and the life-expectancy of the defendant. Here, the application of the statutory provisions pose a danger of "aggrandizement or encroachment" by the Executive Branch into the judiciary, rendering the statute unconstitutional. As a result, the application of the statue usurps an inherent judicial function by preventing a sentencing judge from exercising its constitutional prerogative when imposing a sentence.

## CONCLUSION

Timothy Carpenter respectfully requests that this Court grant him a new trial because the district court allowed use of historic cell phone data obtained in violation of the Fourth Amendment as an important part of its evidence. Second, Carpenter also asks for a new trial because the court prevented cross-examination of Government witness Adriane Foster about an important prior inconsistent statement. Third, Carpenter requests that this Court reverse his convictions on Counts 7 and 8 because of a failure to prove venue in the Eastern District of Michigan. Finally, Carpenter requests alternatively, that this Court remand for re-sentencing because his 1,395 month sentence based in largest part on the mandatory minimum and consecutive 25 year sentences on four separate counts violated both the Eighth Amendment and the separation of powers doctrine.

Respectfully Submitted,

**GUREWITZ & RABEN, PLC**

By:   s/Harold Gurewitz
Harold Gurewitz (P14468)
Attorney for Appellant Carpenter
333W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733

DATE: March 2, 2015

## CERTIFICATE OF COMPLIANCE

Appellant Carpenter certifies that his Brief on Appeal contains 12,251 words and complies with FRAP 32(7)(B)(I).  The type face is 14 point Times New Roman.

s/Harold Gurewitz

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

s/Harold Gurewitz (P14468)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grplc.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Name of Case:            UNITED STATES OF AMERICA
                         **Plaintiff/Appellee**

v

TIMOTHY IVORY CARPENTER
**Defendant/Appellant**

COURT OF APPEALS#:            14-1572

APPELLANT 'S ADDENDUM

Appellant Carpenter, pursuant to Sixth Circuit Rule 11(b), hereby designates the following findings in the district court's record as items to be included in the joint appendix.

| DESCRIPTION OF ENTRY | RECORD ENTRY NUMBER | PAGE ID - RANGE |
|---|---|---|
| Docket Entries | | |
| Indictment | 1 | 1-5 |
| Michael Green Rule 11 Agreement | 38 | 85-103 |
| First Superseding Indictment | 55 | 267-272 |
| Second Superseding Indictment | 66 | 300-306 |
| Third Superseding Indictment | 78 | 384-393 |
| Michael Green Judgment | 92 | 516-521 |
| Adriane Foster Rule 11 Agreement | 96 | 534-550 |
| Fourth Superseding Indictment | 119 | 640-649 |
| Patrick Heard Rule 11 Agreement | 191 | 888-913 |

| | | |
|---|---|---|
| Sanders' Motion in Limine to Suppress Cell Phone Data, including exhibits | 196 | 954-966 |
| Carpenter's Trial Brief | 204 | 1027-1036 |
| Carpenter's Motion in Limine to Exclude Lay and Expert Testimony, including exhibit | 211 | 1058-1085 |
| Carpenter's Notice of Joinder | 214 | 1102-1103 |
| Carpenter's Supplement to Notice of Joinder | 216 | 1106-1114 |
| Government's Response to Defendants' Motions in Limine, including Exhibits | 221 | 1125-1187 |
| Opinion & Order | 227 | 1213-1224 |
| Motion for Acquittal | 242 | 1261-1271 |
| Verdict Form | 249 | 1338-1343 |
| Order Denying Acquittal | 251 | 1350-1359 |
| Sedric Bell-Gill Rule 11 Agreement | 255 | 1364-1389 |
| Adriane Foster Judgment | 282 | 1445-1450 |
| Sedric Bell-Gill Amended Judgment | 288 | 1480-1485 |
| Sentencing Memorandum w-exhibits | 298 | 1579-1594 |
| Judgment | 301 | 1600-1605 |
| | | |
| | | |
| | | |

## WITNESS TESTIMONY

| DESCRIPTION OF PROCEEDING OR TESTIMONY | DATE | RECORD NUMBER & PAGE ID # |
|---|---|---|
| Williams, Derek | 12/5/13 | R325, Pg ID 2035 |
| Dismukes, Jesse | 12/5/13 | R325, Pg ID 2036-2039, 2077-2078, 2091-2092, 2096-2098 |
| Holland, David | 12/5/13 | R325, Pg ID 2132-2141 |
| Holland, David | 12/6/13 | R326, Pg ID 2160-2214 |
| Heard, Patrick | 12/6/13 | R326, Pg ID 2221-2268 |
| Bell-Gill, Sedric | 12/9/13 | R327, Pg ID 2364-2458 |
| McCullough, Rasante | 12/9/13 | R327, Pg ID 2341 |
| Amos, Noah | 12/9/13 | R327, Pg ID 2352, 2356 |
| Slade, Eugene | 12/9/13 | R327, Pg ID 2324-2327 |
| Woods, Audrian | 12/9/13 | R327, Pg ID 2334-2336 |
| Wormley, Anton | 12/10/13 | R328, Pg ID 2466 |
| Foster, Adriane | 12/10/13 | R328, Pg ID 2506-2531, 2535-2541, 2578-2598 |
| Robinson, Brian | 12/11/13 | R329, Pg ID 2640-2648 |
| Green, Michael | 12/12/13 | R330, Pg ID 2819-2820, 2827-2845, 2858-2867, 2874-2883 |
| Decker, John | 12/13/13 | R332, Pg ID 2983-2992 |
| Hess, Christopher | 12/13/13 | R332, Pg ID 2994-3088 |
| | | |

## TRANSCRIPTS: OTHER PLEADINGS

| DESCRIPTION OF ENTRY | DATE | RECORD NUMBER & PAGE ID # |
|---|---|---|
| Final Conference | 3/26/13 | R309, Pg ID 1643-1645 |
| Plea Conference/Hearing | 4/9/13 | R310, Pg ID 1649, 1654 |
| Opening Statements | 12/5/13 | R325, Pg ID 2026-2027 |
| Discussion re: Venue (Counts 7 &8) | 12/6/13 | R326, Pg ID 2272-2273 |
| Closing Arguments | 12/16/13 | R333, Pg ID 3198-3272 |
| Sentencing | 4/16/14 | R336, Pg ID 3334 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |